UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHNNY ESPINAL-BISONO,         :              3:25-cv-852 (MPS)
     Petitioner,             :
                             :
v.                           :
                             :
WARDEN, FCI DANBURY,         :
     Respondent.           :

**RULING ON PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner, Johnny Espinal-Bisono, a federal inmate in the custody of the Bureau of Prisons

("BOP"), has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2241. Pet, ECF

No. 1. Petitioner challenges a disciplinary sanction imposed by the BOP on the grounds that his

Fourteenth Amendment Due Process rights have been violated. *Id*. ¶ 13(a). He requests that the

Court reverse the factual finding of the DHO, reinstate the loss of 27-days Good Credit Time

("GCT"), and expunge the incident report. *Id*. ¶ 15. Respondent contests the petition and submits

that Petitioner failed to exhaust his administrative remedies and was afforded all the process that

was due. *See* Resp., ECF No. 14. For the reasons set forth below, the Petition for writ of habeas

corpus is **DENIED**.

**I. BACKGROUND**[1]

Petitioner was sentenced in the United States District Court for the District of Connecticut

on October 23, 2023, to a 50-month term of imprisonment followed by a four-year term of

supervised release after pleading guilty to Conspiracy to Possess with Intent to Distribute and to

---

[1] The page numbers cited in this ruling refer to the page numbers assigned by CM/ECF (the court's electronic case filing system) and not to the page numbers of the original documents.

Distribute Fentanyl. *See* Judgment, ECF No. 14-1. Petitioner was housed at FCI Danbury in the custody of the BOP, and he was released on March 25, 2026.[2] Pet., ECF No. 1 at 1.

Petitioner's release does not render the case moot because he remains subject to a term of supervised release. ECF No. 14-1 at 2 ("Upon release from imprisonment, the defendant shall be on supervised release for a term of **4** years."). If the Court found that Petitioner was entitled to the good time credit he seeks, it could reduce his term of supervised release. *Levine v. Apker*, 455 F.3d 71, 77 (2d Cir. 2006) (in Section 2241 petition, "the fact that the district court might . . . modify the length of [petitioner]'s supervised release [after his release from BOP] would constitute 'effectual relief.' A case or controversy thus exists . . ."); *Campbell v. Warden, F.C.I. Schuylkill,* 2023 WL 8919343, at *3 (E.D.N.Y. Dec. 27, 2023)( "[A] Section 2241 petition that challenges his entitlement to good time credit. . . does not necessarily become moot when the petitioner is released from prison because a court may provide effectual relief even after a petitioner's imprisonment term has ended by for example reducing his term of supervised release." (internal quotation marks, alterations, and citation omitted)).

At the time of his sentencing, the parties and the Court anticipated that Petitioner would be deported when he was released from the BOP, which explains why the Court imposed a condition of supervised release forbidding the Petitioner from re-entering the U.S. if he was deported. ECF No. 14-1 at 2 ("If you are deported from the United States, you must not re-enter the United States without prior written permission from the Secretary of the Department of Homeland Security. If you re-enter the United States, you must report to the nearest Probation Office within 72 hours after you return."). But even if Petitioner has been deported since his release from the BOP, his

---

[2] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). A recent search of the BOP Inmate Locator confirms that Petitioner is no longer housed at FCI Danbury. *See* BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last visited July 5, 2026).

petition would not be moot. Petitioner continues to serve his term of supervised release, a condition of which bars him from reentering the U.S. if deported. ECF No. 14-1 at 2. Because the relief he seeks, if granted, would result in a reduction of his term of supervised release that subjects him to this collateral consequence, his petition is not moot. *Swaby v. Ashcroft*, 357 F.3d 156, 160 (2d Cir. 2004) ("Petitioner asserts an actual injury—a bar to reentering the United States—that has a sufficient likelihood of being redressed by the relief petitioner seeks from this Court. His appeal [of denial of habeas petition under § 2241] is therefore not moot."); *Taveras v. Dep't of Homeland Sec.*, 2019 WL 6344934, at *2 (N.D.N.Y. Nov. 27, 2019) (internal citations, alterations, and quotation marks omitted) ("Federal courts have jurisdiction under § 2241 to grant writs of habeas corpus to aliens when those aliens are in custody in violation of the Constitution or laws or treaties of the United States. So long as the petitioner files the habeas petition before being deported, the custody requirement has been met. . . . A petitioner's release from custody does not automatically moot a habeas corpus action, so long as there are collateral consequences of the conviction upon which the now-ended incarceration was based . . .").

### A. Factual Background

According to a written account from BOP staff member, on October 22, 2024, at approximately 3:45 p.m., the BOP staff member and a Lieutenant observed CCTV cameras and saw another inmate, Sherman, engaged in what appeared to be a verbal altercation with another inmate. Disciplinary Hearing Officer Report ("DHO Report"), ECF No. 14-3 at 4. The staff member "continued to observe inmate Sherman's actions and witnessed him approach [Petitioner]." *Id*. The staff member recounts that Petitioner "initiated the fight by shoving Inmate Sherman[,]" then Inmate Sherman struck Petitioner to the face, Petitioner and Inmate Sherman

3

began to wrestle with each other on the ground, and both Petitioner and Inmate Sherman "kept delivering closed fists to the face and upper chest area." *Id*.

Once the staff member observed this altercation, he immediately contacted FCI Control Center for additional staff to come and disperse the fight. *Id*. Several inmates were seen separating both Petitioner and inmate Sherman, and Petitioner went "to the other side to get away from inmate Sherman." *Id*. Inmate Sherman then approached Petitioner from behind and punched Petitioner with a closed fist to the back of his head and knocked him to the ground. *Id*. Inmate Sherman kept delivering closed fist punches and Petitioner was unable to fight back. *Id*. Staff then responded, and the fighting stopped. *Id*.

Because of this altercation, Petitioner was charged with violation of BOP Code 201, Fighting with another person, and given advanced written notice of the charge. *Id*. at 2. On October 24, 2024, Petitioner was advised of his rights before a DHO staff member, and he signed an acknowledgment. *See* Inmate Rights, ECF No. 14-4 at 2. Petitioner also received notice that he would have a hearing before the DHO, and he signed this notice and waived the right to have witnesses. Not. of Hearing, ECF No. 14-5 at 2. He also initially requested a staff representative, but on November 7, 2024, he changed his mind and removed that request. *Id*.

The DHO hearing occurred on November 7, 2024. DHO Report, ECF No. 14-3 at 2. The DHO report reflects that Petitioner waived his right to a staff representative and the right to call witnesses and that no written statements from witnesses were offered/considered. *Id*. at 2-3. At no time during the hearing did Petitioner raise any procedural issues, request witnesses, request staff representation, or present written documentation as evidence. *See id.* at 3. Petitioner denied the charge, and stated, in summary, "I was only defending myself. He came toward me, so I pushed him off." *Id*. at 2.

DHO Amico considered Petitioner's statement, the Incident Report, CCTV footage, staff memoranda, photographs, and medical assessments. *Id*. at 4. DHO Amico found that Petitioner's statement that he was only defending himself did not relieve him of responsibility, and that this statement showed that Petitioner was attempting to minimize his actions. *Id*. DHO Amico also relied on the staff member's written account of the incident and gave greater weight to the reporting staff member's statements. *Id*. DHO Amico reviewed the video footage and found it was consistent with the reporting staff member's account of events—that Petitioner initiated the physical altercation by shoving inmate Sherman and was actively engaged in fighting prior to walking away. *Id*. The medical assessments were also consistent with a fight. *Id*.

After considering all the evidence, the DHO found that Petitioner's claim that he was defending himself was without merit. *Id*. Ultimately, DHO Amico determined by the greater weight of the evidence that Petitioner had not presented sufficient evidence to refute the charge, and DHO Amico found that Petitioner had committed prohibited act 201, Fighting with Another Person. *Id*.

DHO Amico sanctioned Petitioner to a 27-day disallowance of good conduct time; 15-days of disciplinary segregation; a 3-month loss of commissary privileges; and a 3-month loss of visitation. *Id*. at 5. DHO Amico explained the reason for imposing the sanctions, namely, to let Petitioner know he will be held responsible for his actions at all times; that the action/behavior of an inmate to become involved in a fight with another inmate poses a threat to the health, safety, and welfare of both himself and all other inmates and staff; and fighting cannot be tolerated. *Id*. The DHO Report was signed by DHO Amico on December 4, 2024, and delivered to Petitioner on December 20, 2024. *Id*.

### B. Procedural Posture

On May 27, 2025, Petitioner filed his § 2241 Petition, ECF No. 1, and Memorandum in Support, ECF No. 1-1. Petitioner challenges the disciplinary actions taken against him by the BOP under the Fourteenth Amendment Due Process Clause. *See* Pet'r Mem., ECF No. 1-1 at 4-7. He claims that the DHO disregarded certain evidence and improperly rejected his claim of self-defense. *See id.* Petitioner also submitted a sworn statement from inmate Sherman, dated December 29, 2024, in which inmate Sherman states that he has a long history of mental instability and physical assault, and that on the day of the altercation, he became unhinged and threatened all inmates around him with verbal assaults. *Id*. at 16. Inmate Sherman further attests that he was fully responsible for the altercation, and he attacked Petitioner, so Petitioner had no choice but to try to move him away. *Id*. Lastly, inmate Sherman attests that Petitioner kept asking him if he had a weapon and he would not answer, leading Petitioner to believe that he had a weapon. *Id*. Petitioner asserts that the DHO ignored these facts during the hearing; however, this statement is dated approximately six to seven weeks after the hearing occurred. *See id.* at 5. Petitioner also maintains he attempted to exhaust his administrative remedies, but was thwarted. *Id*. at 2-4.

Petitioner also filed a Supplemental Memorandum, challenging his ineligibility for First Step Act ("FSA") credits due to his impending deportation. *See* Pet'r Suppl. Mem., ECF No. 10 at 3. He requests that this Court apply FSA credits towards his early release to Immigrations and Customs Enforcement. *Id*. at 3.

Respondent opposes the Petition and Supplemental Memorandum on the grounds that: (1) Petitioner failed to exhaust his administrative remedies; (2) the disciplinary finding comports with the "some evidence" standard governing prison disciplinary proceedings; and (3) Petitioner did

6

not raise his FSA claim in his petition, and even so, this FSA claim has already been denied by a prior court order. *See* Resp., ECF No. 14.[3]

## II. LEGAL STANDARD

Section 2241 grants federal courts jurisdiction to issue writs of habeas corpus to prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A writ of habeas corpus under § 2241 "is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). Thus, § 2241 petitions are appropriately used to expunge disciplinary sanctions, including the loss of good time credits, from a prisoner's record. *See id.* The petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011). Finally, in a case filed pursuant to § 2241, the petition "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," as well as any documents deemed "integral" to it because of the petition's heavy reliance "upon its terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citation modified).

## III. DISCUSSION

### A. Exhaustion

First, Respondent argues that the petition must be dismissed because Petitioner failed to exhaust his administrative remedies. Resp't Mem., ECF No. 11-1 at 4-10. Because the merits are

---

[3] Respondent has provided Petitioner's criminal judgment and a Declaration from Legal Assistant Cheryl Magnusson, who has access to SENTRY, the BOP computerized database. *See* ECF Nos. 1-1, 1-2. Respondent has also submitted the following exhibits: (A) the DHO Report; (B) Inmate Rights at DHO Hearing; (C) Notice of DHO Hearing; and (D) SENTRY Report containing a history of Petitioner's administrative remedy filings. *See* ECF Nos. 11-3 to 11-6.

more straightforward than the exhaustion issue and warrant denial of the petition, I assume without deciding that the Petitioner has exhausted his remedies.

### B. Merits of Petition

The Court finds that the petition should be denied on the merits.

### i. Procedural Due Process & Sufficiency of Evidence

Petitioner does not challenge his disciplinary sanctions on the ground that he was not afforded sufficient written notice. Instead, Petitioner challenges his disciplinary sanctions by claiming that DHO Amico's finding that he was guilty of a Code 201 offense was not supported by reliable evidence, namely, because DHO Amico failed to consider Petitioner's claim that he acted in self-defense and the declaration from inmate Sherman. Pet'r. Mem., ECF No. 10 at 4-7.

The Fifth Amendment to the U.S. Constitution provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Inmates deprived of Good Credit Time as a result of disciplinary proceedings are entitled to the minimum due process. *Superintendent v. Hill*, 472 U.S. 445, 453 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). "[T]o comport with procedural due process, an inmate charged with a violation in a disciplinary hearing must be given: '(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.'" *Williams v. Menifee*, 331 Fed. App'x 59, 60 (2d Cir. 2009) (quoting *Superintendent*, 472 U.S. at 454).

Judicial review of the written findings required by due process is limited to determining whether the disposition is supported by "some evidence." *Hill*, 472 U.S. at 455. Specifically, there must be "reliable evidence" in the record that supports the disciplinary ruling. *Luna v. Pico*, 356

F.3d 481, 488 (2d Cir. 2004) (construing "some evidence" as "reliable evidence" of inmate's guilt). Determining whether this standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board," or here, the DHO. *Hill*, 472 U.S. at 455–56. "This standard is extremely tolerant and is satisfied if there is any evidence in the record that supports the disciplinary ruling." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citation modified).

The Court finds that Petitioner's Fourteenth Amendment Procedural Due Process rights were not violated. First, Petitioner was given the opportunity to call a staff representative, but he ultimately chose not to. *See* Resp., ECF No. 14 at 11-12 (citing Not. of Hearing, ECF No. 14-5); ECF No. 14-3 at 3. Petitioner also waived the right to call witnesses, and he was invited to submit documentary evidence, but chose not to do so. *Id.* (citing DHO Report, ECF No. 14-3). In fact, Petitioner did not raise any procedural issues during the DHO hearing on November 7, 2024. *See* ECF No. 14-3 at 3. Petitioner was afforded all the procedural protections required for a disciplinary proceeding.

Second, Petitioner argues that the DHO should have considered his self-defense claim. Contrary to Petitioner's argument, the DHO Report reflects that DHO Amico did consider Petitioner's self-defense claim, but found that Petitioner's claim was without merit. *See* DHO Report, ECF No. 14-3 at 4. Moreover, the DHO was not even required to consider Petitioner's self-defense claim. Although the presentment of self-defense at a prison disciplinary hearing has not been addressed by the Second Circuit, the general principle remains—disciplinary proceedings in a prison setting "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. And "courts that have

considered the self-defense issue have concluded that prisoners do not have a fundamental right to [assert] self-defense in disciplinary proceedings." *Sharabi v. Recktenwald*, No. 15CV2466VECHBP, 2017 WL 1957040, at *2 (S.D.N.Y. May 10, 2017) ("BOP's refusal to recognize self-defense in response to a fighting charge did not violate [p]etitioner's right to due process[,]" especially, where there was no use or threat of deadly force) (citation modified and internal quotation marks omitted); *see also Shakur v. McNeil*, No. 20-CV-708 (VAB), 2020 WL 4818906, at *9 (D. Conn. Aug. 17, 2020) (plaintiff could not sustain an Eighth Amendment claim for a challenge to a disciplinary finding of guilty based on self-defense because "an inmate has no constitutional right to self-defense in prison disciplinary proceedings").

Third, Petitioner's argument that the DHO failed to consider the written statement from inmate Sherman, in which inmate Sherman claims to have started the fight, is without merit. *See* Resp., ECF No. 14 at 12. The DHO Report reflects that Petitioner was given the opportunity to call inmate Sherman as a witness or obtain a statement from him, but Petitioner failed to do so. *See* DHO Report, ECF No. 14-3. Moreover, as Respondent emphasizes, the statement from inmate Sherman is dated December 27, 2024, approximately six-weeks after the DHO hearing and one week after Petitioner received the DHO Report. Petitioner does not point to any authority to suggest that this Court should disrupt BOP disciplinary findings based on new evidence. In fact, the persuasive authority provided by Respondent shows the opposite as Courts within this District have concluded that BOP disciplinary findings should not be reversed based on new evidence. *See Calderon v. Flowers*, No. 25-CV-00549 (AWT), 2025 WL 3124048, at *5 (D. Conn. Nov. 7, 2025) (declining to consider new evidence to review the merits of a DHO decision that is supported by reliable evidence); *Koustas v. Williams*, No. 18-CV-869 (VLB), 2018 WL 10498449, at *3 (D.

10

Conn. Oct. 15, 2018) (declining to consider documentary evidence that was not presented at DHO hearing).

Fourth, to the extent Petitioner faults the DHO for placing greater weight on the staff member's statement, he is essentially challenging the DHO's weighing of the evidence. "It is not the province of this Court, given the limited standard of review, to weigh the evidence presented to the DHO." *Calderon*, 2025 WL 3124048, at \*5 (citation modified); *see also Stroud v. Stover*, No. 23-CV-1687 (SVN), 2024 WL 4513070, at \*9 (D. Conn. Oct. 17, 2024).

Finally, the Court finds that the DHO's finding that Petitioner was guilty of the Code 201 charge was supported by reliable evidence. Petitioner claims that the incident report contradicted the DHO report as to who threw the first punch after Petitioner shoved inmate Sherman. Pet'r Mem., ECF No. 1-1 at 6-7. Although the DHO's Report may have conflicted, in part, with the staff member's written account of the altercation as to who threw the first punch,[4] this does not negate the DHO's finding that Petitioner was guilty of a Code 201 offense by the greater weight of reliable evidence. *See Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004). Although Petitioner claims he acted in self-defense, he was nevertheless engaged in an altercation with inmate Sherman. DHO Report, ECF No. 14-3 at 4. Moreover, the DHO considered not only the staff member's written account of the incident, but also CCTV footage, photographs, and a medical assessment. *Id*. at 4.

Because the DHO finding as to Petitioner's guilt was supported by some evidence, the Court finds that Petitioner was afforded all the process that was due, and therefore, his claim that his Fourteenth Amendment rights were violated is denied.

---

[4] *See* Incident Report, ECF No. 1-1 at 9; DHO Report, ECF No. 14-3 at 4.

11

### ii. First Step Act

Petitioner argues, for the first time in his Supplemental Memorandum, that he is entitled to FSA time credits, and he seeks to have this Court award him FSA credits toward earlier deportation. *See* Pet'r Mem., ECF No. 10. Notably, Respondent has proffered that Petitioner has already raised these same arguments—he claimed he was being improperly denied FSA time credits due to a final removal order—and had these arguments rejected on the merits in a prior habeas proceeding in this District. Resp., ECF No. 14 at 16-18 (citing *Espinal-Bisono v. Puzio*, No. 3:24-cv-2040-VDO (D. Conn. Apr. 25, 2025), ECF No. 13). Thus, Respondent submits that Petitioner should not be given a second chance to relitigate already decided issues. *Id*. at 17. The Court agrees.

"Under the common law 'abuse of the writ' doctrine, a court need not entertain a petition that abuses the habeas process. *Garcia v. Dep't of Homeland Sec.*, 422 F. App'x 7 (2d Cir. 2011) (citation modified). Abuse of the writ can occur if a petitioner "could have asserted his present claims in his prior petition." *Id*. (citation modified). "[W]here a petitioner has failed to appeal a previous unfavorable habeas decision, raising a subsequent habeas petition with the same claim abuses the writ." *Id*.; *see also Esposito v. Ashcroft,* 392 F.3d 549, 550 (2d Cir. 2004). "Generally, the government bears the burden of pleading abuse of the writ[,]" but the district court may also invoke the doctrine *sua sponte* so long as the district court provides notice, except in circumstances where there is no possibility of actual prejudice. *Garcia*, 422 F. App'x at 7.

Here, Respondent has shown that Petitioner is raising the same FSA claims in the present petition that were raised in his prior petition and adjudicated on the merits. Petitioner chose not to file an appeal of the order denying his habeas petition in Case No. 24-cv-2040-VDO. Petitioner was also given notice and the opportunity to file a reply to Respondent's response in this case, as

well as an additional extension of time to file a reply. *See* Orders, ECF Nos. 15, 17. To date, Petitioner has not done so. For these reasons, the Court finds there is no prejudice to Petitioner in dismissing these claims.

Even so, in Case No. 24-cv-2040, the habeas petition was denied on the grounds that: (1) to the extent Petitioner disputed the existence of a final order of removal, the court lacked jurisdiction to adjudicate that claim; and (2) under the FSA, 18 U.S.C. § 3632(d)(4)(E)(i), petitioner was ineligible to apply FSA credits because he was subject to a final order of removal. If Petitioner's prior FSA claims had not been previously raised and adjudicated, and this Court were to review Petitioner's FSA claims here, this Court would have issued the same ruling. As such, this claim is denied.

## IV. CONCLUSION

Based on the foregoing, the Petition for writ of habeas corpus (ECF No. 1) is **DENIED**. The clerk is instructed to close this case. Any appeal from this order would not be taken in good faith.

_____/s/_____
Michael P. Shea
Chief United States District Judge

**SO ORDERED** this 7th day of July 2026, at Hartford, Connecticut.